### THE STATE v. VAN HART.*

emurrer to indictment for uttering, &c.

It is an indictable offence to utter and publish in this State, a forged or counterfeit Bank note of another State, for two dollars; although the *passing* of any Bank note, under five dollars, is in this State, prohibited by statute. It is not necessary in an indictment to aver that the Bank, whose note is alleged to be imitated or forged, is an incorporated institution.

---

The defendant was indicted at the Oyer and Terminer, of Passaic county, for uttering and publishing as true, a certain false, forged and counterfeit promissory note for the payment of money, purporting to have been issued by the Bank of Westerly, in the State of Rhode Island, on the 8th September, 1837 ; whereby the said Bank promised to pay F. S. or bearer, on demand two dollars; knowing the same to be false, &c. with intent to defraud, &c.

The indictment having been removed into this court by *Certi-*

* Decided orally at February Term, 1839.

*orari*, the defendant put in a general demurrer to the same; and the Attorney General having joined in demurrer; it was argued by

Mr. *Scudder*, for the defendant, and by

Mr. *Ogden*, District Attorney, and the *Attorney General*, for the State.

HORNBLOWER, C. J.   By the 42d Sect. of our criminal code, *Elm. Dig.* 109, it is made an indictable offence, for any one to utter or publish as true, knowing the same to be false, *any* Bank bill, or note, check, draft, or promissory note for the payment of money.   Nevertheless, it is contended by the counsel for the defendant, that it is not an indictable offence, to utter and publish, as true, knowing it to be false, a Bank note for two dollars; because, by another, subsequent statute, *Elm. Dig.* 37, it is declared to be unlawful for any person, to make, issue or put in circulation, or to pay away, pass, exchange or transfer, any note, bill, ticket or paper, purporting to be a Bank note, or of the nature, character or appearance of a Bank note, of a less denomination than five dollars.

It seems, to be a *non sequitur*, an unwarrantable conclusion, that because it is unlawful to issue or pay away a *genuine* note under five dollars, it is therefore not indictable knowingly to utter and publish, as true, a forged and counterfeit note, under five dollars; yet it has been gravely insisted to be so, and legal ingenuity, has made the argument somewhat plausible.   But this is all: there is no foundation in truth and justice for such a principle to rest on ; the ethics of legal jurisprudence, however subtle and evanescent, will hardly sustain so bald a proposition.

While one statute declares it to be unlawful to pass any note, under the denomination of five dollars; the other makes it a high misdemeanor, punishable with fine and imprisonment, to pass such a note, as true and genuine, knowing it to be forged and counterfeit.   I see no reason, why these statutes should not stand together: they are not repugnant, and the repeal of the one, could have no possible effect on the other.

The case of *Drury* v. *Defontaine*, cited by defendant's coun-

sel, 1 *Taunt.* 131, only shews, that if any act is forbidden under a penalty, a contract to do it, is void. It has, therefore, no ap-. plication to this case, *Moffat's case, Leach* 337, and *The People* v. *Shall,* 9 *Cowen,* 778, and the cases there cited by the court, shew what no one will deny; that the forging, or the publishing as true, a forged instrument, which upon the very face of the indictment, would appear to be void, even if genuine, is not an indictable offence.

In *The People* v. *Wilson,* 6 *Johns. R.* 320, the Supreme Court of New York, held that under their statute, it was not an indictable offence, to utter as true, a counterfeit Bank note of the State of Vermont, for seventy-five cents. I have not had an opportunity of looking at the statute of New York, but so far as its provisions can be gathered from what was said by the court, they are materially variant from those contained in ours. The statute of New York enacts, that no person shall *give* or *receive* in payment of any debt, &c. or in any way attempt or offer to circulate any bill or note, of any Banking company within that State, or *elsewhere,* of a less denomination than one dollar, under the penalty, &c. The court, however said, they would not decide that it was not felony to *forge* such a bill, or *larceny* to steal it; but only, that passing it, was not felony under their statute, because such notes were *void* in that state, for the purposes of *circulation,* and incapable of any such use.

Our statute, on the other hand, does not forbid the *receipt* of such notes, nor render them *void* in the hands of the receiver.— It is true, they are prohibited as a circulating medium, and a penalty is imposed upon any one, that issues them as such; but no penalty is inflicted on the person who receives them. Had the statute stopped here, it might have amounted, constructively, to a prohibition against receiving such notes in payment, or for any other purpose; and so have rendered them void instruments in the hands of every person, in this State. But the legislature have carefully guarded against such a construction, by enacting, in the 3d Sect. that no such bill or note, shall be held or taken to be void, or of no effect; but the money mentioned in them, may be recovered by suit at law, with interest and costs. They are then, if genuine, valid instruments upon the face of them; and whether issued by persons, or by Banks, in this State or else-

where, they are legal securities, and may be recovered on by action at law. To say, therefore, that to forge, or to utter such instruments, knowing the same to be forged, is not an indictable offence, simply because, they are not a lawful circulating medium, would equally protect from indictment and punishment, him who should forge a bond or mortgage.

Another objection urged by the defendant's counsel, was, that the Bank of Westerly, was not shewn by the indictment, to be an incorporated Bank ; and the case of *Spangler* v. *The Commonwealth*, 3 *Binn. R.* 533, was cited and relied on in support of that objection.

But that case was decided upon the statute of Pennsylvania, declaring it unlawful for any association of persons, not incorporated by law, to make or issue any bills or notes in the nature of Bank notes ; or for any person to offer or accept in payment, any note issued by an unincorporated Bank : thus in effect invalidating all such notes.

Previous to the passage of that statute, indictments in Pennsylvania had never averred that the Bank, whose note or bill had been forged or stolen, was an incorporated Bank. And in this State, although we have had on our statute book, ever since the year, 1815, an act prohibiting unincorporated Banking associations; *Elm. Dig.* 32. Yet so far as my obsertation and researches have extended, it has never been averred in any indictment, that the note set out as a forgery, was in imitation of a note issued by an incorporated Bank. Nor can it make any difference, that the note in question in this case, purports to be a note of a foreign Bank. If they have any statute in Rhode Island, prohibiting private or unincorporated Banking, that is matter of defence and may be proved on the trial.

In the case of *The U. S.* v. *Turner*, an indictment for the forgery of, and for uttering as true, a paper writing in imitation of and purporting to be a Bank bill or note of the Bank of the U. S. but signed by persons, as president and cashier, who were not, and never had been such officers of that Bank, was sustained, by the unanimous opinion of the Supreme court of the U. S. and it was held not to be material, whether a forged instrument be made in such a manner, as that if in truth it were such as it is counterfeited for, it would be of validity or not : and further,

that it was no answer to the charge of forgery, that the instrument if genuine would not be available by reason of some collateral objection not appearing on the face of it; in support of which positions, Mr. Justice Story, by whom the opinion of the court was delivered, cites several ancient English authorities.

The counsel for the State, in support of this indictment, cited 1 *Baldw. C. C. R.* 367; 2. *Serg. & Raw.* 551; 62 *Id.* 237; *The People* v. *Flanders,* 18 *Johns. R.* 164; *White* v. *The Commonwealth,* 4 *Binn. R.* 421, and several other cases; but it is unnecessary to examine them. For the reasons already given, the demurrer must be overruled.

FORD, WHITE, and DAYTON, Justices, concurred.

NEVIUS, Justice, did not hear the argument.

Upon the application of the defendant's counsel, the defendant was permitted to withdraw the demurrer, and plead to the indictment.

*Demurrer overruled.*

CITED *in State* v. *Weller, Spencer* 523.